UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO ORNELAS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 09-6946-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On September 25, 2009, Alfonso Ornelas ("Plaintiff" or "Claimant" or "Ornelas") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on March 30, 2010. On June 29, 2010, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and

remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff is a 44 year old male who was found to have the medically determinable severe impairments of degenerative disc disease of the lumbar spine and a psychotic disorder. (AR 23.) Plaintiff has not engaged in substantial gainful activity since October 27, 2006, the alleged onset date. (AR 23.)

Plaintiff's claim for SSDI and SSI benefits was denied initially October 5, 2007. (AR 21.) Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") David G. Marcus on October 1, 2008, in Downey, California. (AR 21.) Claimant appeared and testified with the assistance of a Spanish interpreter. (AR 21.) Vocational expert Stephen Berry also appeared and testified. (AR 21.)

The ALJ issued an unfavorable decision on December 3, 2008. (AR 21-29.) The ALJ determined that the Plaintiff had the residual functional capacity ("RFC")[1] to perform light level exertion work, but could not perform his previous work as a drywall installer or a cutting machine tender. (AR 27-28.) The ALJ, however, did find that the Claimant could perform other work in the national economy, including small products assembler, cleaner/ housekeeper, and final inspector. (AR 28.) Consequently, the ALJ concluded that Claimant was not under a disability within the meaning of the Social Security Act. (AR 29.)

The Appeals Council denied review on August 10, 2009. (AR 1-6.) Also on August 10, 2009, the Appeals Council received additional evidence (AR 467-510), which it made part of the record. (AR 4.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues that Plaintiff raises as grounds for reversal are as follows:

---

[1] Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

2

1. Whether the ALJ properly evaluated the opinion of treating physician Ana Pantoja, M.D.

2. Whether the ALJ properly evaluated medical evidence of Ornelas' mental impairment.

3. Whether the ALJ properly evaluated Ornelas' testimony.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla'. . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner

has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity . 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. §

416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

Plaintiff suffered an injury to his back at work on October 27, 2006. (AR 51-52, 340, 344.) As a result, he was not able to return to his work as a drywall installer. (AR 73.) He suffered low back pain and was prescribed Vicodin three to four times daily, which causes drowsiness. (AR 62, 340, 344, 443.) He underwent spinal surgery in Mexico in April, 2008. (AR 27, 449.) Plaintiff also was diagnosed with a psychotic disorder and has been prescribed Klonopin, Paxil, and Zyprexa. (AR 60, 340.)

The ALJ determined that Claimant had the severe impairments of degenerative disc disease of the lumbar spine and a psychotic disorder (AR 23), but that none of these impairments singly or in combination meets or equals a listed impairment. (AR 24.) The ALJ assessed Ornelas with a RFC of light work subject to the following restrictions:

> . . . able to lift 10 pounds frequently and 20 pounds occasionally; able to stand and/or walk six hours in an eight hour workday; able to sit six hours in an eight hour workday; able to perform occasional climbing, bending, balancing, stooping, kneeling, crouching, and crawling; able to perform work requiring only simple, work-related decisions; and limited to jobs that do not require more than a few changes in the workplace, particularly including stressful changes.

(AR 25.)

The ALJ found that Claimant was unable to perform his past relevant work as a drywall installer and cutting machine tender. (AR 27.) Nonetheless, the ALJ determined at step five of the sequential process that there are jobs that exist in significant numbers in the national economy that Claimant could perform, specifically small products assembler, cleaner/housekeeper and final inspector. (AR 28-29.) Thus, the ALJ concluded that Claimant was not under a disability within the meaning of the Social Security Act. (AR 29.)

**DISCUSSION**

The ALJ decision must be reversed because the ALJ improperly rejected the treating physician's opinion and failed to develop the record sufficiently regarding Plaintiff's physical and mental impairments and the appropriate RFC, post-surgery. The ALJ also improperly rejected Plaintiff's subjective complaints.

## I. THE ALJ FAILED TO DEVELOP THE RECORD ADEQUATELY

To begin, the ALJ erroneously rejected the opinion of treating physician Dr. Ana Pantoja. The ALJ rejected Dr. Pantoja's opinion primarily because the ALJ found her opinion inconsistent with the record or with the opinions of the consulting orthopedic examiner and a State agency reviewing physician. (AR 27.) The ALJ erred in rejecting Dr. Pantoja's opinion and in failing to develop the record sufficiently regarding Plaintiff's physical and mental impairments, particularly as it relates to the proper RFC for Plaintiff, post-surgery.

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d 1273, 1288 (9th Cir. 1996). Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ has a basic duty to inform himself about facts relevant to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. Tonapetyan, 242 F.3d at 1150. The ALJ's duty is heightened when the claimant is unrepresented (as is the case here) or mentally ill. Id.

Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry. Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150. The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.

**A.  The ALJ Improperly Rejected Treating Physician Dr. Pantoja's Opinion On Plaintiff's Physical Impairments**

In this case, Dr. Pantoja provided a physical capacities assessment dated January 16, 2008, that indicates limitations of sitting less than 2 hours at a time up to 6-8 hours a day, standing and walking but 2 hours a day, unable to move lower extremities in a repetitive motion, lifting 10 pounds occasionally, and taking Vicodin 3-4 times daily, which can cause dizziness and sleepiness. (AR 442-43.) Dr. Pantoja's medical records from October, 2007, to September, 2008, also were submitted. (AR 456-64.) These records show continuing treatment for low back pain and Vicodin medication following Claimant's April, 2008, surgery in Mexico. (AR 456-64.) There is considerable evidence in the record consistent with Dr. Pantoja's assessment, including MRIs, an EMG, a nerve conduction study, and continuing treatment and medications such as methadone, Vicodin, Neurontin, Hydrocodone, Gapenpentin, and amitriptyline post-surgery. (AR 329-30, 384, 387, 388, 393, 467-510.)

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Treating physicians are entitled to "special weight," Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988), indeed the "greatest weight." Orn, 495 F.3d at 632. Greater weight is given treating physician opinions than other physicians' opinions because treating physicians are "employed to cure and thus have the greatest opportunity to know and observe the patient . . ." Smolen, 80 F.3d at 1285; see also Orn, 495 F.3d at 633 (treating relationship provides a "unique perspective"). The ALJ may not reject a treating physician's opinion, even if contradicted, unless he or she makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence. Smolen, 80 F.3d at 1285.

Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's

7

opinion if the examining physician's opinion is supported by different, independent clinical findings or other evidence in the record. See Andrews v. Shalala, 53 F.3d 1035, 1041-42 (9th Cir. 1995); Orn, 495 F.3d at 632 (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests on independent clinical findings). Lastly, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; but such an opinion may serve as substantial evidence when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

Based on the above legal standards, the ALJ's rejection of Dr. Pantoja's physical assessment of Claimant based on the opinions of consulting orthopedic examiner Dr. Conaty and State agency reviewer Dr. Wilson was error. Dr. Conaty's report is dated August 27, 2007 (AR 344), and Dr. Wilson's September 5, 2007. (AR 355.) Both of these reports predate Claimant's April 2008 surgery in Mexico, and therefore are more in doubt than Dr. Pantoja's evaluations, some of which were rendered after the surgery.

Indeed, Dr. Conaty's RFC that is consistent with light level work does not constitute "substantial evidence." Dr. Conaty only reviewed a previous MRI and x-rays done at the time of his analysis. (AR 347.) He apparently did not review the medical evidence of record. As Claimant asserts, Dr. Conaty was relying on the same evidence as Dr. Pantoja, and thus the treating physician's opinion must carry greater weight. Orn, 495 F.3d at 633 (when examining physician relies on same clinical findings as treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence). That is particularly true here where Dr. Pantoja's assessments continue for over a year past the once in time evaluation of Dr. Conaty and past the April 8, 2008, surgery in Mexico. Tellingly, the ALJ offers no response to Claimant's assertion that Dr. Conaty's opinion cannot be substantial evidence under Orn. The ALJ erred in relying on Dr. Conaty's opinion to reject Dr. Pantoja's opinion.

Dr. Wilson's assessment, moreover, actually supports Claimant's position because it is consistent with Dr. Pantoja's RFC in significant respects and would impose greater limitations than the ALJ did. Dr. Wilson opined that Claimant must "alternate sit/stand every 2 hours for 15 minutes to relieve pain and discomfort." (AR 352.) The ALJ describes but did not accept or discuss this limitation (AR 27) or offer any explanation for rejecting it. Because this limitation is supported in the record by Dr. Pantoja's similar assessment, Dr. Wilson's opinion on the need for a sit/stand option is substantial evidence. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600. Dr. Wilson, moreover, reviewed the evidence of record through September 2007, unlike Dr. Conaty. The ALJ, then, erred in rejecting Dr. Pantoja's sit/stand limitation. The vocational expert indicated that a sit/stand limitation would preclude performance of the cleaner/housekeeper job. (AR 77.)

Perhaps recognizing the ALJ's error in rejecting a sit/stand limitation, the Commissioner argues that any error is harmless. He observes that the vocational expert testified that, even with a sit/stand opinion, Plaintiff still could perform the occupations of assembler, inspector and cashier, albeit at eroded numbers. (AR 76-77.) The Commissioner's argument, however, addresses Dr. Wilson's limitation concurred in by Dr. Pantoja but not the entirety of Dr. Pantoja's RFC assessment. Even the ALJ recognized that Dr. Pantoja's RFC was for no more than sedentary exertion (AR 26-27) and Claimant argues that Dr. Pantoja's opinion is for less than the sedentary range of work. (JS 18.) The Commissioner concedes that the matter is ambiguous. He states that "it is not clear that Plaintiff would be disabled. Dr. Pantoja's opinion seems to allow for a range of sedentary level work". (JS 16.) (Emphasis added.) The ALJ had a duty to develop the record to resolve this ambiguity in the evidence before making an RFC assessment or reaching a disability conclusion.

The ALJ, however, cited two more reasons for rejecting Dr. Pantoja's opinion. He rejected it because August 2008 treatment records suggest some improvement following Claimant's April 2008 surgery. Dr. Pantoja's treatment notes, however, extend through

October 2008, well after the surgery. (AR 456-64.) Her last entry dated September 17, 2008, indicates that Claimant has continuing low back pain (8 on a scale of 10) and possible dependency issues with Vicodin. (AR 457.) This note is consistent with Plaintiff's testimony at the hearing that after some improvement post-surgery the pain returned. (AR 58.) It also is consistent with significant other evidence of continuing chronic low back pain, treatment by Dr. Batres and Dr. Hsu and medications of methadone, Vicodin, Neurontin, Hydrocodone, Gabapentin, and amitriptyline continuing through April 2009. (AR 467-50.) This evidence was presented to the Appeals Council following the October 1, 2008, hearing and added to the record. (AR 4.) The Appeals Council nonetheless denied review. This was error because the single most important issue in this case is Plaintiff's residual functional capacity, post-surgery. Both parties argue the probative value of the evidence added to the record but this Court cannot consider evidence or reasons not relied on by the ALJ. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Additionally, Dr. Batres and Dr. Hsu who treated Claimant in 2009 are not orthopedists. (AR 500.) The ALJ and/or the Appeals Council should have obtained a post-surgery consulting orthopedic evaluation. The record on post-surgery improvement is too ambiguous and undeveloped to constitute a specific, legitimate reason for rejecting Dr. Pantoja's opinion.

  The ALJ's last basis for rejecting Dr. Pantoja's assessment concerns Plaintiff's credibility. The ALJ asserts that Plaintiff had work activity in 2007 inconsistent with disability that was not disclosed. (AR 25-27.) The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces objective medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1281-82 esp. n. 2 (9th Cir. 1995); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). Once the claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the

ALJ finds the claimant's subjective symptom testimony not credible, the ALJ must make specific findings that support this conclusion. Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 949, 958 (9th Cir. 2002); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Reddick, 157 F.3d 722; Smolen, 80 F.3d at 1283-84. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

In this case, there is no contention that Plaintiff is a malingerer. Dr. Conaty stated, "Mr. Ornelas has significant objective clinical findings that support his subjective complaints." (AR 347.) Dr. Bustamante specifically stated Claimant was not a malingerer. (AR 398.) Claimant's attempts at work in 2007 are hardly the behavior of a malingerer. The ALJ, then, cannot discredit Plaintiff's subjective symptom testimony without clear and convincing evidence.

The ALJ questions Dr. Pantoja's opinion because of Plaintiff's work efforts in 2007, which apparently were not disclosed. (AR 25, 27.) The ALJ, however, did not regard these work efforts as substantial gainful activity. (AR 23.) The ALJ nonetheless characterized Claimant's work efforts as "able to function in a job related setting in more than a casual manner in 2007." (AR 23.) Plaintiff offers explanations for why these work attempts do not preclude a disability finding, but the dispute is of limited consequence because Claimant underwent surgery in Mexico in April 2008. There is nothing in the record to question Claimant's credibility post-surgery. The ALJ's credibility determination does not meet the clear and convincing evidence standard.

### B. The ALJ Did Not Develop The Record Regarding The Appropriate Post-Surgery RFC For Plaintiff

The ALJ erred in rejecting Dr. Pantoja's opinion. The probative value of Dr. Pantoja's opinion, however, is limited somewhat by the ambiguity of the record, especially in regard to the appropriate RFC for Claimant, post-surgery. Although Dr. Pantoja continued to treat Plaintiff post-surgery, she did not complete another RFC assessment. The record does not tell us whether Dr. Pantoja still maintains her January 2008 RFC assessment or believes that a sit/stand option is still necessary. Indeed, her original RFC is not clear whether she is proposing sedentary or less than sedentary work, a matter disputed by the parties. Plaintiff's post-surgery condition, treatment, pain medication regimen, and medication side effects are ambiguous and underdeveloped. The ALJ decision also is uninformed by the considerable evidence added to the record by the Appeals Council.

The Court also is concerned about the impact of Plaintiff's medications on his ability to work. Claimant and his physicians indicated dizziness and drowsiness caused by Vicodin. (AR 62, 443.) Plaintiff testified that his medications caused him to take two naps a day of 30 to 40 minutes each. (AR 62.) The vocational expert testified that such rest periods would preclude all employment. (AR 78.) The ALJ never discusses medication side effects. This was error where there is medical evidence of side effects (AR 443) that may affect this claimant's ability to work. An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medication. SSR 96-7p; Erickson v. Shala, 9 F.3d 813, 817-18 (9th Cir. 1983) (citing Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th Cir. 1987) (superseded by statute, see Bunnell, 912 F.2d 1149, 1153 (9th Cir. 1990). Under Varney, an ALJ may not reject a claimant's testimony about the subjective limitations of medication side effects without making specific findings similar to those required for excess pain testimony. Varney, 846 F.2d at 985. Here, the ALJ failed to make any findings. The ALJ should have developed the record further on this issue.

The ALJ and/or Appeals Council should have recontacted Dr. Pantoja and perhaps Dr. Batres and Dr. Hsu. The ALJ should have obtained a post-surgery orthopedic consulting

opinion. As it is, the ALJ's RFC, which is based largely on pre-surgery evidence and uninformed by the evidence added to the record by the Appeals Council, is not based on an adequately developed record sufficient to make an intelligent decision about what jobs, if any, Plaintiff physically can perform, post-surgery.

### C. The ALJ Did Not Develop The Record Adequately Regarding Plaintiff's Mental Impairments

The record regarding Plaintiff's mental impairments is also ambiguous. The ALJ determined that Claimant suffers from a psychiatric disorder. (AR 23.) The ALJ also determined that Claimant was able to perform only work that requires "simple, work-related decisions and that does not involve more than a few, stressful, workplace changes." (AR 27.) This assessment is ambiguous, as the parties in the Joint Stipulation engage in a debate over whether the Claimant can perform DICOT (Dictionary of Occupational Titles) reasoning level one or reasoning level two jobs. See DICOT App. C, 1991 WL 688702 (G. P.O.), setting forth the General Educational Development ("GED") reasoning levels. The ALJ, however, never discussed this distinction in his decision nor made a determination that Claimant could perform only one and two step instructions.[2] The Court cannot base its ruling on considerations not relied on or discussed by the ALJ. Connett, 340 F.3d at 874. Also, neither the ALJ nor the vocational expert ever address the stress levels of the specified jobs. The ALJ, after all, bears the burden of proof at step five of demonstrating the availability of jobs in the national economy that Plaintiff can perform.[3] Lounsburry, 468 F.3d at 1114.

Finally, the ALJ decision does not appear to consider the combined effect of Plaintiff's physical and mental impairments on his ability to work. An ALJ must consider the combined

---

[2] The vocational expert testified that the cashier job was a reasoning level three job (AR 79), which would seem to be precluded by the ALJ's limitation.

[3] Dr. Bustamante opined that Plaintiff's mental impairment would cause him to miss three or more days of work a month. (AR 399.) This would preclude all employment. (AR 81.) The ALJ, however, properly rejected Dr. Bustamante's assessment both as internally inconsistent because of his GAF score of 70 and as sharply inconsistent with the assessments of Dr. Pinanong (AR 339-343), Dr. McDowell (AR 356-369), and Dr. Wynn (AR 370-71).

effect of all of a claimant's impairments on his or her ability to function "without regard to whether each alone was sufficiently severe." Smolen, 80 F.3d at 1290. The ALJ failed to develop the record on the <u>combined</u> impact of all of a claimant's physical and mental impairments, severe or nonsevere, on his RFC.

**ORDER**

IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security is reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 6, 2011          */s/ John E. McDermott*
                                JOHN E. MCDERMOTT
                                UNITED STATES MAGISTRATE JUDGE

14